LOU STECHER, INC.,
Plaintiff-Appellant,

v.

LABOR AND INDUSTRIAL RELATIONS COMMISSION, DIVISION OF EMPLOYMENT SECURITY, et al., Defendants-Respondents.

No. 48928.

Missouri Court of Appeals,
Eastern District,
Division One.

May 28, 1985.

Allen D. Kircher, Clayton, for plaintiff-appellant.

Patricia W. Shaw, Rick V. Morris, Div. of Employment Sec., Timothy P. Duggan, Labor and Indus. Com'n, Jefferson City, for defendant-respondent.

PUDLOWSKI, Presiding Judge.

This is an appeal from the circuit court's affirmance of the Labor Industrial Relations Commission's (Commission) determination that striking employees were eligible for benefits because their unemployment was not due to a stoppage of work which existed because of a labor dispute. We reverse.

The employer, Lou Stecher, Inc., operates two retail grocery stores: one at 1601 Brentwood Boulevard and one at 8563 Watson Road (hereinafter cited as the Brentwood store and the Watson store, respectively). The twenty striking employees (claimants) are members of the United

Food Commercial Workers Local 655. A strike was called by the Union on March 3, 1982 against the employer. On that same date, Local 88 (meat cutters), which belongs to the same parent union, established a picket line at the employer's premises. Local 655 honored the picket line of Local 88 and did not report for work after March 3, 1982.

Stecher's stores remained open from March 3, 1982, through the date of the hearings before the Appeals Tribunal on July 28, and August 13, 1982, except for two instances. The first was a ten day shutdown of the Watson store for remodeling as a warehouse store. The second concerned the Brentwood store. This store was closed for two days due to a power shortage and a bomb threat.

As a result of the strike, claimants filed for unemployment benefits for the period beginning February 28, 1982. The Deputy of the Division of Employment Security denied the benefits on the ground that unemployment was due to a stoppage of work caused by a labor dispute. The Appeals Tribunal reversed the deputy's decision. The Commission affirmed this ruling which was subsequently affirmed by the circuit court. Stecher appeals.

This appeal involves one issue: whether the claimants were unemployed "due to a stoppage of work" which existed because of the labor dispute. If a work stoppage existed, the claimants would be ineligible for benefits. Section 288.040 RSMo (1982).[1]

Claimants of employment benefits have the burden of proving in the proceedings before the Commission that they are eligible for benefits. *Producers Produce Co. v. Industrial Commission of Missouri,* 365 Mo. 996, 291 S.W.2d 166, 173 (1956). The claimants are eligible only if the Commission found that statutory requirements were met. *Id.*

On appeal from a judgment of the circuit court, we review the decision of the Commission, and not that of the circuit court. *Division of Employment Security v. Labor and Industrial Relations Commission,* 625 S.W.2d 882, 884 (Mo.App. 1981). Our review must determine whether the Commission's decision presents us with a question of fact or law. Determinations by the Commission of questions of law are not binding on a reviewing court. However, appellate review of factual determinations by the Commission, is limited to ascertaining whether, on the record as a whole, the decision is supported by competent and substantial evidence. *Div. of Employment Security v. Labor and Industrial Relations Commission,* 617 S.W.2d 620, 621–22 (Mo.App.1981).

A review of the record shows that the Commission affirmed and adopted the findings and conclusions of the Appeals Tribunal. The Commission's order in effect made the decision of the Appeals Tribunal its own decision for the purpose of judicial review. *Poggemoeller v. Industrial Commission, Division Employment Security,* 371 S.W.2d 488, 498 (Mo.App.1963).

In reaching its decision, the Appeals Tribunal compared the 9-week period beginning March 3, 1982, with the 9-week period before March 3, 1982. The comparison reflected a total dollar reduction in sales of 16%; a total customer count reduction of 6%; a total payroll reduction of 18%; and a total increase in payroll hours worked of 6%. The Appeals Tribunal concluded that

during the period of that labor dispute some diminution occurred in the employer's operation but that such diminution was not substantial. The employer continued the business throughout the period of the labor dispute and did not completely shutdown the operation of its facilities due solely to the labor dispute. The total reduction in sales and customer

---

**1.** Appellant relies on § 288.040 RSMo (1978). The statute was amended, effective March 10, 1982, and is applicable to this case. However, the relevant portions of the statutory language have not changed.

count during the labor dispute was not of such a nature as to be substantial. The payroll analysis during the labor dispute fails to show a substantial reduction. It is found, therefore, that the unemployment of the claimants during the period March 3, 1982 through August 13, 1982, was not due to a stoppage of work....

■ The Appeals Tribunal's decision revealed no dispute concerning any factual matters. Because the only issue is whether the facts of a particular case fall within the meaning of a statute, the inquiry here is of a question of law. *See Haynes v. Unemployment Compensation Commission*, 353 Mo. 540, 183 S.W.2d 77, 80 (1944); *Laclede Gas Co. v. Labor Industrial Relations Commission*, 657 S.W.2d 644, 649 (Mo.App.1983). Since the legal significance of the strike is at issue, we must decide whether the Commission properly applied the law to the facts before them. *Laclede Gas Co.*, 657 S.W.2d at 649.

Missouri statutory law provides that

A claimant shall be ineligible for ... benefits for any week for which ... his total or partial unemployment is due to a stoppage of work which exists because of a labor dispute....

§ 288.040.5(1) RSMo (1982).

The parties stipulated that claimants were unemployed because of a labor dispute. The issue thus narrows to whether claimant's unemployment was due to a stoppage of work under the statute.

Section 288.040.5(2) defines a stoppage of work as "... a substantial diminution of the activities, production or services at the establishment, plant, factory, or premises of the employment unit."

■ Activities, production and services are broad terms which reflect legislative intent that all activities and services normally performed by the employer must be considered in determining whether there is a stoppage of work. *Laclede Gas Co.*, 657 S.W.2d at 650. Whether the entire opera-

tion of the employer has returned to normal is the deciding issue. *Id.* at 652–53. As we have stated in *Laclede Gas Co.*, the business operations must substantially conform to the standard or regular operations of the plant. 657 S.W.2d at 652.

Normal operations were not carried out during this strike at Lou Stecher's Markets. Evidence at the hearings show that at the outset of the strike the employer had insufficient employees to adequately serve the customers. Family members, friends and part-time college students filled most positions left vacant by the striking workers. The strike reduced the regular number of customers substantially.

Employer operations also were substantially hindered due to the inexperience of the employees. The number of payroll hours which increased approximately 400 hours per week occurred as a result of a material difference in the nature of the hours worked before and during the strike. The employer had to employ three truck drivers at each store to deliver products which prior to the strike were delivered by vendors. Additionally, the store required other persons, including supervisory people, to unload and stack that which would not have been required to be performed prior to the labor dispute. The employer had to purchase extra equipment to permit these inexperienced workers to perform the additional work.

Further, the evidence showed that as a result of the picket line, gross profits suffered a 25% and 23% reduction at the Brentwood and Watson stores respectively. Average sales at the Brentwood store for the four weeks prior to the labor dispute was $63,365. Since May 30, 1982, the average sales at this store have been $48,957. Average sales at the Watson store for the four week period prior to the labor dispute was $69,087. Average sales for the four weeks prior to the warehouse conversion of this store was $54,062.

■ While it is impracticable to attempt to fix a definite percentage of diminution of

activities, production or services to gauge when a work stoppage commenced and ended, a 20 to 30 percent cut in production seems to be the critical breakage point to establish a stoppage. *Tri-State Motor Transit Co. v. Industrial Commission, Division of Employment Security,* 509 S.W.2d 217, 225. Nonetheless, each case must be judged on its own particular facts.

The particular facts of this case deal with a grocery retail business. A grocery retail business, especially a warehouse store, is unique in that it cannot sustain loss of revenues as well as other businesses. Grocery stores operate on a low margin profit and depend primarily on volume to generate that profit. Here, sales for the employer's previously profitable two stores failed to meet the crucial breaking point as a result of the strike. Their sales and profit reduced more than 20%.

Upon these facts the Appeals Tribunal erred in concluding as a matter of law the no work stoppage existed. A substantial diminution in this employer's operations did occur. The Appeals Tribunal found that the employer did not completely shutdown the operation of its facilities. The statutory requirement of "substantial" however, does not mean "completely" and the Appeals Tribunal erred in applying this standard.

Therefore, this court concludes as a matter of law that a substantial diminution of activities, production and services at Lou Stecher, Inc. occurred. The claimants' unemployment was due to a stoppage of work which exist because of a labor dispute. For the above reasons the claimants are ineligible for unemployment compensation. The circuit court's judgment is reversed.

CARL R. GAERTNER and KAROHL, JJ., concur.