**SCOTT COUNTY REORGANIZED SCHOOL DISTRICT R–6, a/k/a Sikeston Public Schools, Respondent,**

v.

**LABOR AND INDUSTRIAL RELATIONS COMMISSION OF MISSOURI, and Missouri Division of Employment Security, Appellants,**

and

**Marvin R. Fitzpatrick, Respondent.**

No. 14020.

Missouri Court of Appeals, Southern District, Division Three.

Dec. 17, 1985.

Motion for Rehearing or to Transfer Denied Jan. 9, 1986.

Application to Transfer Denied Feb. 18, 1986.

Larry R. Ruhmann, Rick V. Morris, Jefferson City, for appellant Missouri Div. of Employment Security.

Timothy P. Duggan, Jefferson City, for appellant Labor and Ind. Rel. Comm. of Mo.

Fielding Potashnick, Sikeston, for respondent Scott County Reorg. Sch. Dist. R–6.

FLANIGAN, Judge.

Is a substitute school teacher, hired by a school district to work "as needed" during the school year, entitled to unemployment benefits under the Missouri Employment Security Law, § 288.010, et seq.,[1] on the basis of being "partially unemployed," § 288.060.3, during a four-week period in which he taught only six days?

The Labor and Industrial Relations Commission answered the question in the affirmative. The circuit court, on appeal by the school district, reversed the decision of the commission and held that the teacher was not eligible for benefits. The commission appeals. For the reasons which follow, this court agrees with the circuit court and affirms its judgment.

The Missouri Employment Security Law provides "for compulsory setting aside of unemployment reserves to be used for the benefit of persons *unemployed* through no fault of their own." § 288.020.1 (Emphasis added.) "[P]rovisions for benefits for persons unemployed through no fault of their own require liberal construction ... and ... disqualifying provisions of the law are to be strictly construed against the disallowance of benefits to *unemployed but available* workers." *Mo. Div. of Emp. Sec. v. Labor & Indus. Rel.*, 651 S.W.2d 145, 148 (Mo. banc 1983) (Emphasis added.)

---

1. All references to statutes are to RSMo 1978, V.A.M.S.

A person claiming unemployment benefits has the burden of proving, in the proceedings before the commission, that he is eligible for benefits. *Lou Stecher, Inc. v. Labor & Indus. Rel.,* 691 S.W.2d 936, 938 (Mo.App.1985). On this appeal by the commission from the judgment of the circuit court, this court reviews the decision of the commission and not that of the circuit court. *Division of Employment Security v. Labor & Industrial Relations Commission,* 625 S.W.2d 882, 884 (Mo.App.1981).

Appellate review of factual determinations by the commission is limited to ascertaining whether, on the record as a whole, the decision is supported by competent and substantial evidence. *Lou Stecher, Inc. v. Labor & Indus. Rel.,* supra, at 938[3]. As to questions of law, however, this court is not bound by decisions of the commission. *Belle St. Bank v. Ind. Com'n Div. of Emp. Sec.,* 547 S.W.2d 841, 844[2] (Mo.App.1977). Where there is no conflict in the evidence on any material issue, and no conflicting inferences to be drawn, the question is solely one of law. *Dubinsky Brothers, Inc. v. Industrial Com'n of Mo.,* 373 S.W.2d 9, 16 (Mo. banc 1963); *Lou Stecher, Inc. v. Labor & Indus. Rel.,* supra, at 939[5]. Sections of the Employment Security Law which are material to the disposition of this appeal are set forth below.[2]

"A claimant must satisfy two general requirements to qualify for unemployment benefits. First, he or she must be 'able to work and available for work.' § 288.040.-1(2), RSMo Supp.1984. Second, the claimant must be free from disqualification. Section 288.050.1(1) disqualifies a claimant if he 'left his work voluntarily without good cause attributable to his work or to his employer.'" *Wimberly v. Labor and Indus. Com'n,* 688 S.W.2d 344, 346 (Mo. banc 1985).

"The expression 'available for work' under § 288.040.1(2) has not been defined by our courts. Instead, Missouri courts have chosen to determine availability on a case-by-case basis.... However, 'a claimant must clearly possess a genuine attachment to the labor market and be able, willing, and ready to accept suitable work.'" *Missouri Div. of Emp. Sec. v. Labor & Indus. Rel.,* 651 S.W.2d 145, 151 (Mo. banc 1983).

A claimant may render himself "unavailable" for work, and thus ineligible for unemployment benefits, by imposition of unreasonable restrictions on his accessibility. *Ferry v. Labor & Indus. Rel. Com'n of Missouri,* 652 S.W.2d 728, 729 (Mo.App.1983). Although the issue of availability is ordinarily one of fact for the commission, *Ferry,* supra; *Lauderdale v. Division of Employment Sec.,* 605 S.W.2d 174, 178 (Mo.App.1980), when there is no material factual dispute the issue is one of law. *Dubinsky Brothers, Inc. v. Industrial Com'n of Mo.,* supra, at 16.

---

**2.** Section 288.030(23)(b). "An individual shall be deemed 'partially unemployed' in any week of less than full-time work if the wages payable to him for such week do not equal or exceed his weekly benefit amount plus ten dollars."

Section 288.040.1. "A claimant who is unemployed and has been determined to be an insured worker shall be eligible for benefits for any week only if the deputy finds that:

(1) ...

(2) He is able to work and is available for work; provided, however, that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work; ..."

(3) ... "

(4) ... "

Section 288.050.1. "Notwithstanding the other provisions of this law a claimant shall be disqualified for waiting week credit or benefits until after he has earned wages equal to ten times his weekly benefit amount if the deputy finds:

(1) That he has left his work voluntarily without good cause attributable to his work or to his employer; except that he shall not be disqualified:

(a) If the deputy finds he quit such work for the purpose of accepting a more remunerative job which he did accept and earn some wages therein; or.... "

Section 288.060.3. "Each eligible insured worker who is partially unemployed in any week shall be paid for such week a partial benefit. Such partial benefit shall be an amount equal to the difference between his weekly benefit amount and that part of his wages for such week in excess of ten dollars, and if such partial benefit amount is not a multiple of one dollar, such amount shall be raised to the next multiple of one dollar.... "

"A person may not at the same time occupy the status of one employed and that of one unemployed when seeking pecuniary benefits provided by law for the latter only." *Division of Employment Sec. v. Labor & Indus,* 617 S.W.2d 620, 625 (Mo. App.1981); *Neeley v. Industrial Com'n of Mo. Div. of Emp. Sec.,* 379 S.W.2d 201, 205 (Mo.App.1964). If the judgment of the trial court was correct in reversing the decision of the commission, this court will not disturb that judgment even if the trial court "gave wrong or insufficient reason therefor." *Lauderdale,* supra, at 178[8].

The commission contends that Marvin Fitzpatrick, the substitute teacher-claimant, "was partially employed (sic) from January 13, 1980 until February 9, 1980," and that Fitzpatrick "was able to work and was available for work" and that the trial court erred in setting aside the commission's findings to that effect. The commission makes other attacks upon the trial court's judgment but they need not be considered if the trial court properly reversed the decision of the commission on any of the grounds previously stated.

There is no significant factual dispute. The facts as set forth in the commission's brief are adopted by respondent school district.

On August 22, 1979, claimant Fitzpatrick was hired by the school district as a substitute teacher. Under the terms of the agreement Fitzpatrick "was to work as needed at the rate of $27.50 per day."

Fitzpatrick testified that he "began working almost immediately ... they called me beginning about the end of September. It was on a day-to-day basis. When I applied I understood that I was applying for the position of substitute teacher. It was my understanding at that time that I would be called for work, if at all, on a 'when and if needed' basis by the district. At that time I did not expect to get any more employment than that which was available."

Fitzpatrick also said, "I took a teacher's class who had been retired or was fired for about four or five weeks. I filed my claim on January 15, 1980. Since January 13 I have been physically able to work and contacting prospective employers on the average of at least five per week. I have not turned down or refused any full time job. I have not turned down or refused any part time work, especially from the school district. I continued as a substitute teacher from the time of my application.... That was the understanding under which I took the job of employment to begin with and it is still my understanding as to the status of my employment as of the date of my application."

Sam Harbin, superintendent for the school district, gave testimony which, according to Fitzpatrick, was "basically correct.... There is no part of it I would like to contradict." Harbin testified that a substitute teacher agrees to "work on the basis of need." Harbin also said, "Nothing changed the relationship between Fitzpatrick and the school district after his beginning employment on August 22, 1979. Fitzpatrick was still on the eligible list of substitute teachers as of January 13, 1980. Our substitute teachers are expected to be available during a school year, which is from the beginning of the school year until the end of the school year. It is part of the employment agreement that the substitute teachers notify the district if they wish their name to be removed from the list of substitute teachers. Fitzpatrick has never notified the school district that he wished his name removed from the list of substitute teachers. Fitzpatrick's employment agreement with the district remains the same today as it did at the beginning of that employment. Fitzpatrick is subject to call on a 'when and if needed' basis, even as of the date of this hearing." The hearing was held on February 28, 1980.

Section 288.060.3 provides for "a partial benefit" to "each eligible insured worker" who is "partially unemployed in any week." The commission found that Fitzpatrick "was partially *employed* (sic) from January 13, 1980 until February 9, 1980. During that time he actively and earnestly sought full time work and he was able to work. It

is found, therefore, that claimant is eligible for benefits for the period January 13, 1980 to February 9, 1980." The commission also found: "During this period the claimant was given some work by [the school district] and the claimant reported all earnings to the division." According to the school records, received into evidence as an exhibit by the commission, Fitzpatrick worked six days, for the school district, between January 19, 1980 and February 14, 1980.

The school district, at the various levels of the proceedings below, did not question Fitzpatrick's status as an "insured worker." The school district, however, has maintained that Fitzpatrick is not eligible for benefits, that he was not unemployed or partially unemployed, and that he voluntarily quit his work "without good cause."

Even if Fitzpatrick, during the days he was not called to duty by the school district, was to be deemed "unemployed," under § 288.040.1(2) he was entitled to benefits only on a finding that "he is able to work and is available for work." That statute also provides "that no person shall be deemed available for work unless he has been and is actively and earnestly seeking work."

Section 288.050.1(1) disqualifies a claimant from benefits until after he has earned wages equal to 10 times his weekly benefit amount if the deputy finds "that he has left his work voluntarily without good cause attributable to his work or to his employer." That disqualification is subject to certain exceptions not applicable here.

The record fails to support a finding of "availability." No factually similar Missouri cases have been found. Cases dealing with the issue of "availability," including *Gee v. Labor & Indus. Rel. Com'n of Mo.*, 674 S.W.2d 69 (Mo.App.1984); *Ferry v. Labor & Indus. Rel. Com'n of Missouri*, 652 S.W.2d 728 (Mo.App.1983); *Lauderdale v. Division of Employment Sec.*, 605 S.W.2d 174 (Mo.App.1980); and *Golden v. Industrial Com'n Div. of Employment Sec.*, 524 S.W.2d 34 (Mo.App.1975), do afford some guidance.

In *Gee* the claimant attended school from 7:00 a.m. to 12:00 noon, five days a week. Gee looked for "full time evening work only." He was properly denied benefits because he had placed an undue restriction on his availability for work and had "separated himself from the general labor market because of his school attendance." Similarly, in *Golden,* a college student rendered himself "unavailable" for work, and thus ineligible for unemployment benefits, by imposing conditions on the hours and days he was available for work so that they would not interfere with his class attendance.

In *Ferry* the claimant was ineligible for benefits by unreasonably restricting his availability for work. The claimant limited the time and salary conditions under which he was willing to work (evening hours only, at a certain rate; no day time employment unless at a higher rate).

In *Lauderdale* a claimant, on maternity leave, rendered herself "unavailable," and thus ineligible for benefits, because she was "not genuinely attached to the labor market since by accepting the leave of absence she limited her availability for work because the very conditions limiting her availability for her regular employment also substantially limited her performing suitable work for other employers, and her intention to return to her regular job, which her employer admittedly was holding for her, after the birth of her child limited her employment opportunities." *Lauderdale,* at 178.

Missouri cases dealing with the disqualifying factor found in § 288.050.1(1)—"that he has left his work voluntarily without good cause attributable to his work or to his employer," furnish additional guidance. They include *Board of Educ., Etc. v. Labor & Indus., Etc.,* 633 S.W.2d 126 (Mo.App. 1982); *Div. of Emp. Sec. v. Labor & Ind. Rel. Com'n,* 625 S.W.2d 882 (Mo.App.1981); and *Dubinsky Brothers, Inc. v. Industrial Com'n of Mo.,* 373 S.W.2d 9 (Mo. banc 1963).

In *Board of Educ.* the claimant, a substitute teacher, had only a temporary teach-

ing certificate which allowed her to teach 90 days during the school year. After being employed for 90 days, her employment terminated by reason of § 168.011 which prohibited her from teaching, and prohibited the board from offering her further employment, in that school year. The court held that claimant was disqualified because she left her work "voluntarily." The court pointed out that claimant accepted her employment "with her eyes wide open, fully aware that she would be unemployed when the [certificate] expired. There is no question that she 'exercised a free-will choice and control' as to the consequences of her actions, and that her leaving was therefore voluntary." *Board of Educ.* at 133.

The court also said, at p. 133–134:

"In the present case, if every school board in this state that employs substitute teachers who hold only a temporary certificate know that these teachers would be eligible for unemployment benefits, it seems obvious that these boards simply would not employ those Missouri citizens, since the financial burden of their contribution to the system which supplied those benefits would increase dramatically. This result would not be beneficial to the many Missouri citizens who have temporary teaching certificates and seek gainful employment, nor would it be fair to deny schools in this state the use of the services of teachers who could be available for temporary duty as substitutes."

In *Div. of Emp. Sec.*, the claimant was employed by a shoe manufacturer as a "piece worker." She was paid by the number of "pieces" completed. Claimant quit her job because her hours of employment were cut from full time to part time, although her rate of pay per "piece" remained the same. The court held that claimant left her work without good cause attributable to her work or to her employer. The court pointed out that "good cause" for leaving employment is limited to instances where the unemployment is caused "by external pressures so compel-ling that a reasonably prudent person would be justified in giving up employment." *Div. of Emp. Sec.*, at 884.

The court said, at p. 884:

"The sole 'external pressure' found by the Commission was the reduction in work. Recognizing the dire consequences such a reduction will cause a worker paid on a piecework basis, we are nevertheless unable to say that in such a situation a reasonable worker, seized with a genuine desire to work and be self-supporting, would prefer no work at all."

In *Dubinsky Brothers, Inc.*, a motion picture theater projectionist, employed as a third man on a two-man job and as a substitute during vacation periods, was not entitled to unemployment compensation during the time he was not working because the two regular projectionists were on duty. The court held that the work was a two-man job and that the claimant was a relief man. The court said, "The [claimant] continued to be purely a relief man and he was *relieved* when [the regular projectionist] decided to come back." *Dubinsky Brothers, Inc.* at 15. The court based its decision on a finding that the claimant had left his work voluntarily without good cause attributable to his work or to his employer.

In remaining on the list of substitute teachers, making himself subject to call, at unpredictable times, on a "when and if needed" basis, Fitzpatrick unreasonably restricted his availability for work with respect to other employers. The record is silent on what Fitzpatrick told other prospective employers with regard to his intention to retain or sever his relationship with the school district. If he retained that relationship, he rendered himself unavailable. If he severed that relationship, and so far as the school district knew he did not, he would be leaving his work voluntarily without good cause attributable to his work or to his employer.

It should be noted that § 288.050.1(1)(a) removes the disqualification for quitting if "he quits such work for the purpose of accepting a more remunerative job *which*

*he did accept and earned some wages therein."* Here Fitzpatrick applied for other work but he did not accept a more remunerative job and earn some wages therein. If the commission's position were sound, merely applying for such work by Fitzpatrick would remove the disqualification. The exception found in § 288.050.-1(1)(a) comes into play only if the claimant obtains work, in which event, of course, he is not unemployed so long as that work continues.

There is some degree of uniformity in unemployment acts throughout the various states because of statutes similar to § 288.-390 which incorporates federal standards for the payment of unemployment benefits to the extent necessary to entitle Missouri employers to claim the maximum allowable credit against the federal unemployment tax. Accordingly, decisions from other jurisdictions are entitled to some consideration.

Out-state authorities denying unemployment compensation benefits to a person employed as a substitute on a sporadic basis include *Town of Mattapoisett v. Div. of Employment,* 392 Mass. 546, 466 N.E.2d 125 (1984); *Wilmington Country Cl. v. Unemployment Ins. App. Bd.,* 301 A.2d 289 (Del.Super.1973).

In *Town of Mattapoisett,* claimant was employed as a part time police officer from September 1980 to April 1982. He was to work whenever he was needed. He understood that if no work was available in a given week, he would not work. The Supreme Judicial Court of Massachusetts held that claimant was not "partially unemployed" during those weeks in which he did not work as many hours as a full time employee. 466 N.E.2d at p. 127 the court said:

"The review examiner apparently assumed that the statute required that he apply the same full-time weekly schedule of work to an employee hired to work only as a part-time employee as to one employed on a full-time basis. If this interpretation were correct, then all part-time employees, by definition, would be in partial unemployment status.

Such an interpretation does not further the legislative purpose of lightening the burden of unemployment, but rather imposes an artificial definition of unemployment upon a part-time employment contract that may as well be for the convenience of the employee as for the employer. The town had employed part-time police officers for many years to fill in for absent regular officers. To characterize such employees as 'partially unemployed' when both parties understood at the beginning of the employment relationship that the hours of employment were to be irregular and less than full time is to torture the plain meaning of the term."

In *Wilmington Country Cl.,* claimant was a substitute bartender who worked only six days during the year. A lower court held that the claimant's sporadic work constituted employment and that the country club's unemployment compensation account was properly surcharged for the involuntary severance of claimant from his employment. At p. 290 the court said:

"The nature of claimant's work for the Club was such that he left his employment voluntarily. When claimant accepted employment, he was aware that it was for a specific, limited duration. We think the acceptance of employment under these conditions amounted to voluntary termination of the employment at the expiration of the limited occasion. Furthermore, we think it is plain that such voluntary termination was without 'good cause.' ... Therefore, we conclude that claimant was ineligible for benefits."

The court held that it was improper to surcharge the club's account.

In *In re Platt,* 130 Vt. 329, 292 A.2d 822 (1972), claimant worked 9 or 10 days a month as an editor for a monthly magazine. The court held that he was not entitled to unemployment compensation for the other days of the month because he was unavailable for work. Although *Platt* involved a worker who was regularly em-

ployed part time, rather than sporadically, the following language, 292 A.2d at p. 825, is applicable here:

"He also made it clear that he could not take on part-time work that would interfere with his existing employment. In effect, he is not an unemployed person, but an employed person in search of a better job. Such self-betterment is a proper and laudable objective, but it does not thereby qualify a claimant for benefits, or fall within the beneficent purposes of the compensatory statute."

Fitzpatrick failed to satisfy the "two general requirements" to qualify for unemployment benefits set forth in *Wimberly*, cited in the sixth paragraph of this opinion. Fitzpatrick failed to prove he was available for work and was free from the disqualification of § 288.050.1(1).

This court does not believe it was the intention of the legislature to discourage substitute employment by requiring an employer to assume the burden of furnishing unemployment benefits for the period when the substitute employee is not at work.

The judgment is affirmed.

CROW, P.J., and MAUS, J., concurs.