RPCS, INC., Appellant,

v.

Renee WATERS and Division of Employment Security, Respondents.

Nos. 27309, 27311.

Missouri Court of Appeals, Southern District, Division One.

May 5, 2006.

Austin E. Williamson and Aaron D. Jones, Hulston, Jones & Marsh, Springfield, MO, for Appellant.

Cynthia A. Quetsch, Jefferson City, MO, for Respondent Missouri Dept. of Labor and Industrial Relations.

GARY W. LYNCH, Judge.

RPCS, Inc. ("Employer") appealed two decisions by the Labor and Industrial Relations Commission ("Commission") determining that: 1) Renee Waters ("Claimant") was not disqualified for unemployment compensation benefits by reason of her discharge by Employer (Appeal No. 27309); and 2) Claimant was not ineligible for benefits between July 10 through July 23, 2005, as she was available for work, able to work and actively and earnestly seeking work (Appeal No. 27311). We ordered consolidation of the appeals and affirm the Commission's decision in each.

## 1) *Standard of Review*

The limits of our review are governed by both the Missouri Constitution and by statute. Article V, § 18 of the Missouri Constitution requires us to determine whether the Commission's decision is "authorized by law" and whether it is "supported by competent and substantial evidence upon the whole record."[1] *Pulitzer Publishing Co. v. Labor & Indus. Rel. Comm'n*, 596 S.W.2d 413, 417 (Mo. banc 1980). In addition, section 288.210[2] further defines the boundaries of review by providing, in part:

Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decisions of the commission on the following grounds and no other;

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

▆▆▆ In deciding if the Commission's decisions are allowed by law, we are not confined to its conclusions of law or its application of law to the facts. *Shelby v. Hayward Baker, Inc.*, 128 S.W.3d 164, 165–66 (Mo.App.2004). Each question receives independent review with no deference given to the Commission's determinations. *Hoover v. Cmty. Blood Ctr.*, 153 S.W.3d 9, 12 (Mo.App.2005). Whether an employee's actions constitute misconduct related to her work is a question of law. *Dixon v. Div. of Employment Sec.*, 106 S.W.3d 536, 540 (Mo.App.2003).

▆▆▆ On the other hand, we will not replace the Commission's conclusions with our own as to their factual findings. *Id.* We defer to the Commission's "determinations regarding weight of the evidence and the credibility of witnesses." *Id.* Absent fraud, the Commission's factual findings are conclusive on appeal if they are supported by competent and substantial evidence upon the whole record and are not clearly against the overwhelming weight of the evidence. *Clark v. Labor & Indus. Rel. Comm'n*, 875 S.W.2d 624, 626 (Mo. App.1994). When the Commission has reached one of two possible conclusions from the evidence, this Court will not reach a contrary conclusion even if we could reasonably do so. *Id.* at 626–27. If the evidence before the Commission would warrant either of two opposed findings, we

---

1. All references to constitutional provisions are to the Missouri Constitution of 1945.

2. All references to statutes are to RSMo 2000, unless otherwise specified.

are bound by the administrative determination. *Pavia v. Smitty's Supermarket*, 118 S.W.3d 228, 234 (Mo.App.2003).

### 2) *Factual and Procedural Background*

Renee Waters began working for Employer in March of 2004 as a cashier earning $5.50 an hour. Claimant's employment was terminated on June 22, 2004, because she continually had cash shortages in her cash drawers throughout the four months of her employment. Testimony revealed that in June 2004, Claimant's cash register drawers had the following shortages:

June 2—$20.70

June 9—$3.87

June 10—$3.41

June 11—$17.69

June 12—$10.94

June 13—$22.29

June 14—$4.65

June 15—$9.66

June 16—$20.31

Employer, by internal policy, restricted Claimant to $5.00 shortage on each of day of work. Therefore, the shortages on June 9, 10, and 14 did not violate any store policy. The store manager questioned Claimant and testified that she appeared flustered, nervous and concerned about the shortages. She told the manager she did not understand why the shortages were occurring. The manager testified that he had suspicions that Claimant was stealing, but no one observed Claimant taking any money. Claimant testified that she had worked tills during her past employment at other places and had never had the shortage problems. Claimant was discharged by a store official who related that her discharge was due to the cash shortages. Claimant does not dispute that she had shortages but did raise concern over the store's security policy and method of accounting.

From April 2005 until June 25, 2005, Claimant participated in an alcoholic rehabilitation program at Carol Jones Center that required her to attend classes three days a week from nine o'clock in the morning until noon. After June 25, 2005, she attended class one day per week, but she had the option to choose what day and time. Classes were held during both the day and the evening. When asked what she would have done had she been offered a job prior to June 25, 2005 which conflicted with the sessions at Carol Jones Center, Claimant answered that she would either change her days, work weekends or later nights, ask for a day off work, or change her schedule at Carol Jones Center. Claimant further testified that if she had been offered a job after June 25, 2005 that required her to work Monday through Friday from 9:00 am till noon that she would have attended the Carol Jones Center classes at night.

Before mid-July, Claimant had a vision problem that prevented her from working. Claimant obtained new glasses in mid-July that rectified her condition, and she was able to work thereafter. Claimant also testified that the lowest wage she was willing to receive was "minimum [wage] to six" dollars per hour.

Claimant filed a claim for unemployment benefits on June 10, 2005. The Commission found that Claimant was not disqualified because her discharge was not for misconduct connected with her work (Appeal No. 27309). Specifically, the Commission found, in part:

> The record lacks substantial and competent evidence that the claimant was violating any of the employer's procedures regarding handling money or that the claimant was taking money. The tribunal concludes that the evidence of the cash shortages alone is not substantial

and competent evidence of misconduct.... Consequently, the tribunal concludes the record lacks substantial and competent evidence of disqualifying misconduct.

At most the evidence shows the shortages were caused by poor work performance or an inability to perform the job.... Therefore, the tribunal concludes the claimant was discharged on June 22, 2004, but not for misconduct connected with work.

The Commission found that Claimant was ineligible for benefits from June 5, 2005 through July 9, 2005, but she was eligible from July 10, 2005 through July 23, 2005 (Appeal No. 27311). The Commission concluded, in part:

The evidence before the Tribunal shows the claimant was not physically able to work prior to July 9, 2005. From July 10, 2005 through July 23, 2005 the claimant was physically able to work because she suffered no physical impairments. The evidence shows that the claimant's mandatory attendance to the alcoholic rehabilitation program did not prevent her from accepting full-time employment because the program provided flexible options for the claimant.

Therefore the Tribunal concludes the claimant was not physically able to work and she is therefore ineligible from June 5, 2005 through July 9, 2005. The claimant was physically able to work, available for work and earnestly and actively seeking work from July 10, 2005 through July 23, 2005 and is therefore eligible for benefits during that time.

### 3) Employer's Points on Appeal

Employer raises three points on appeal. Point I, directed toward Appeal No. 27309, contends that the Commission's conclusions that Claimant was not disqualified from receiving benefits due to misconduct connected with work is erroneous and not supported by competent and substantial evidence on the record as a whole. Employer supports this allegation by offering that Claimant was repeatedly and inexcusably "short in her tills" and, therefore, her discharge was due to misconduct. Point II, directed toward Appeal No. 27311, contends that the Commission erred in determining that Claimant was eligible for benefits during the period of July 10, 2005 through July 23, 2005. Employer asserts that Claimant was unavailable for work because of her participation in a recovery program, that she restricted her job search by refusing to take employment for less than $6.00 an hour, and that she had a physical condition which prevented her from conducting an active job search. Employer contends that all of these made her ineligible for benefits. Point III, presumably directed toward both appeals, claims error in the Commission's "refusal to allow Employer to admit the Division Employment Packet into the record as is allowed" under Section 288.190.2. We will address the Employer's points in the order presented.

### 4) Claimant's Discharge—Appeal No. 27309

In seeking unemployment compensation, Claimant had the burden of proving her eligibility for benefits. *Tri–State Motor Transit Co. v. Indus. Comm'n,* 509 S.W.2d 217, 220 (Mo.App. 1974). The rationale of the Missouri Employment Security Law is to provide benefits to persons "unemployed through no fault of their own." Section 288.020.1; *Aaron's Auto. Products, Inc. v. Div. of Employment Sec.,* 926 S.W.2d 229, 231 (Mo.App.1996). For that reason, a claimant is disqualified from receiving benefits if he or she "has left work voluntarily without good cause attributable to such work or to the claimant's employer[.]"

Section 288.050.1(1); *Wimberly v. Labor & Indus. Rel. Comm'n,* 688 S.W.2d 344, 346 (Mo. banc 1985). There is no dispute that Claimant had several shortages in her till during the duration of her employment. Are these shortages misconduct connected with work such that Claimant is disqualified from receiving unemployment benefits, as Employer claims, or are they simply poor job performance not rising to the level of misconduct, as concluded by the Commission?

▆▆▆ The determination of misconduct connected with work is a question of law that we review *de novo. Kennett Bd. of Public Works v. Shipman,* 15 S.W.3d 792, 795 (Mo.App.2000). Although Claimant has the burden of establishing that she qualifies for benefits, Employer has the burden to prove a claim of misconduct connected with work. *Miller v. Kansas City Station Corp.,* 996 S.W.2d 120, 124 (Mo.App.1999). If the Employer carries such burden, and:

> if a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the employment laws of this state or any other state as prescribed in this section.

Section 288.050.2.

The phrase "misconduct connected with the claimant's work" is not defined in Chapter 288,[3] but has been consistently defined by our courts as the following:

"[A]n act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent, or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer."

*City of Branson v. Santo,* 111 S.W.3d 910, 913 (Mo.App.2003) (quoting *Sain, v. Labor & Indus. Rel. Comm'n,* 564 S.W.2d 59, 62 (Mo.App.1978)).

▆▆▆ Willful misconduct can be established when the claimant consciously disregards the interest of the employer by action or inaction. *Hurlbut v. Labor & Indus. Rel. Comm'n,* 761 S.W.2d 282, 285 (Mo.App.1988). The violation of a reasonable work rule can constitute misconduct. *Id.* There is a "vast distinction" between the violations of an employer's rule that may justify termination as opposed to a violation of an employer's rule that would warrant a determination of misconduct connected with work. *McClelland v. Hogan Personnel, L.L.C.,* 116 S.W.3d 660, 665 (Mo.App.2003).

Keeping in mind that Employer had the burden of proving misconduct and that factual findings of the Commission are conclusive, we find that Employer failed to prove that Claimant *willfully* or *deliberately* violated Employer's employee policies. Claimant testified that she had no explanation for the shortages and that she had worked tills all her life and never had

---

3. Effective January 1, 2005, the term "misconduct" was defined by statute in Section 288.030, RSMo Supp.2004, adopting in large part the definition from 76 Am.Jur.2d, Unemployment Compensation § 52, p. 945 quoted in *Laswell v. Indus. Comm'n,* 534 S.W.2d 613, 616 (Mo.App.K.C.D.1976). However, because all of the acts alleged to be misconduct in the instant case occurred before January 2005, the new statutory definition is not applicable.

this problem. Claimant specifically denied that she was stealing the money and testified that she would never deliberately make a mistake. The Commission apparently believed Claimant's testimony.

The stated reason for Claimant's discharge was the shortages. There were numerous days when Claimant's cash drawer was short. Employer's policy tolerated shortages up to five dollars per day, but Claimant exceeded that on six occasions in June 2004. The former store manager testified that he retained Claimant as a cashier for four months despite her shortages. He stated that he personally believed she was stealing the money but had no witnesses to that, nor did he monitor her activities when he had the suspicions. The former store manager admitted that he had no evidence that Claimant was stealing or mishandling the money other than the record of the shortages. When the manager confronted Claimant about the shortages, she had no explanation. In addition, Claimant testified that after she counted her till it was left in an office where other people had access to it. Employer's representative did not deny Claimant's assertion, but instead stated that it had never been a problem.

The above facts also demonstrate that Employer failed to carry its burden of proving that Claimant violated an Employer's rule to such an extent as to amount to a wanton or willful disregard of Employer's interest or a deliberate violation of Employer's rules or negligence in such a degree as to manifest culpability, wrongful intent, or evil design when her till was short of money. The Commission found that although Claimant had cash shortages, this fell short of misconduct on her part. The record reflects that Claimant's shortages began early in her employment, but she was retained as a cashier for an additional four months. Although

store managers may have had personal suspicions that Claimant was stealing, no actions were taken to monitor her. Employer failed to offer any evidence that Claimant violated any of Employer's money-handling policies other than its policy limiting shortages to five dollars per day. Employer simply asked the Commission to infer requisite willful and deliberate intent from the fact that shortages existed.

The evidence in the record equally supports three factual inferences in that regard. First, Claimant regularly stole from Employer. Second, some third party regularly stole from Employer. Third, Claimant either lacked the ability or carelessly failed to properly keep tract of the funds in her till, *i.e.*, poor job performance. Employer completely failed to offer any evidence that the first inference was any more likely to be true than the second or the third. The lack of such evidence by the Employer supports the Commission's conclusion that Employer failed to prove that Claimant was guilty of misconduct connected with work. Competent and substantial evidence supports the Commission's decision awarding benefits to Claimant. Employer's first point is denied.

### 5) *Claimant's Eligibility for Benefits for July 10, 2005 through July 23, 2005— Appeal No. 27311*

Employer's second point claims the Commission erred in determining that Claimant was eligible for benefits for July 10 through July 23, 2005, finding that Claimant was physically able to work, available for work and earnestly and actively seeking work during that period. Employer attacks these findings on three grounds. First, Claimant was unable to work due to Claimant's vision problem. Second, Claimant was unavailable for work due to her mandatory participation in a recovery program. Third, Claimant

placed unreasonable restrictions on her search for employment by "refusing to take employment which paid less than six dollars per hour."

An unemployed claimant is eligible for benefits if they are able to work and are "available" for work. Section 288.040. To be considered available for work, the claimant must have been "actively and earnestly" looking for work. *Id.* The expression "available for work" is not defined in section 288.040.1(2), and differs from case to case; however, a claimant must clearly hold a genuine attachment to the labor market and be able, willing, and ready to accept suitable work. *Missouri Div. of Emp. Sec. v. Labor & Indus. Rel. Comm'n,* 651 S.W.2d 145, 151 (Mo. banc 1983) (citing *Producers Produce Co. v. Indus. Comm'n of Missouri,* 365 Mo. 996, 291 S.W.2d 166, 177 (1956)). A claimant may render themselves unavailable for work, and thus ineligible for unemployment benefits, by imposition of unreasonable restrictions on accessibility. *Scott Co. Reorganized Sch. Dist. R–6 v. Labor & Indus. Rel. Comm'n,* 703 S.W.2d 528, 530 (Mo.App.1985). "A willingness to merely be employed conditionally does not meet the test of availability[,] and the determination of availability for work is largely a question of fact for the commission." *Golden v. Indus. Comm'n,* 524 S.W.2d 34, 38 (Mo.App.1975).

The Commission found that Claimant was ineligible for benefits for the period of June 5 to July 9, 2005, because she was physically impaired, due to the lack of eyeglasses. Claimant had an eye condition that caused double vision. Until it was corrected, this impairment hindered her ability to find work. The testimony demonstrated that Claimant received new eyeglasses that corrected her vision in mid-July. Therefore, the Commission did not err in determining that on July 10, 2005,

the vision problem was corrected and was not an obstacle in Claimant's pursuit of employment. Employer has failed to point to any evidence in the record, and we can find none, where Claimant's vision problem prevented her from working after its correction by obtaining eyeglasses on July 9, 2005.

Claimant's rehabilitation program previously required that she attend classes three days per week from nine o'clock a.m. until noon. This schedule ceased on June 25, 2005, after which Claimant was required to attend one class per week at her own scheduling either during the day or in the evening. There was no evidence that such a class would in any way interfere with Claimant holding a job. Therefore, the Commission did not err in concluding that on July 10, 2005, Claimant's rehabilitation classes did not interfere with her ability to find and maintain full-time employment.

Lastly, Employer contends that Claimant limited her job search by restricting her income to at least $6.00 an hour. Employer claims that this is unreasonable since her previous job provided a wage of $5.50 an hour. There is nothing in the evidence to support Employer's contention, and its brief fails to refer to any evidence in the record supporting this allegation. Potential wage was an issue debated at the hearing, and the testimony of Claimant was that she would accept a wage of "minimum to six[,]" indicating that she was willing to work for minimum wage up to $6.00 per hour. For that reason, the Commission did not err when it determined that Claimant did not restrict her job search on the basis of wage.

Once a claimant files an initial claim and is determined to be an insured worker, a benefit year is created. Section 288.030.1(3). The benefit year is a one-year period beginning with the week in

which the initial claim is filed. *Id.* During this benefit year, the claimant may claim and receive up to twenty-six weeks of unemployment benefits, subject to a number of restrictions and qualifications. Section 288.060.4. Following a determination of employee's benefits for the particular week, if either party is aggrieved, that party can appeal. *See* section 288.070.4. *See also Heavy Duty Trux v. Labor & Indus. Rel. Comm'n*, 880 S.W.2d 637, 645 (Mo.App.1994). Eligibility for benefits is established each week, and though a claimant may be eligible one week, he or she may not be eligible another week. *Id.* at 645. The restrictions of eligibility that Employer complains of were resolved by Claimant on or before July 9, 2005. Therefore, the Commission did not err in concluding that Claimant was ineligible for benefits from June 5 to July 9, 2005 and eligible for benefits from July 10 to July 23, 2005. Employer's point two is denied.

### 6) *Alleged Failure to Admit Division Employment Packet Into Evidence— Appeals No. 27309 and 27311*

It is difficult to ascertain Employer's claim on this issue. There was a hearing in connection with each appeal, and in both hearings the Referee refused the admission of some sort of evidence. Rule 81.12(a)[4] provides that "[t]he record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented[.]" However, we cannot identify "the division employment packet" to which Employer refers.

Rule 84.04 outlines the proper contents for an appellant's brief. Employer's arguments fail to cite specific page references to the legal file or transcript, in violation of Rule 84.04(i), and Employer fails to submit in its appendix copies of the "papers" it argues were unfairly excluded from evidence, in violation of Rule 84.04(h).

With these deficiencies, this Court cannot determine or locate that evidence which Employer suggests created error in its exclusion. A brief that does not comply with Rule 84.04 preserves nothing for appellate review. *Libberton v. Phillips*, 995 S.W.2d 66, 67 (Mo.App.1999). Claims of error that are not properly briefed "shall not be considered in any civil appeal." Rule 84.13(a). When a brief fails to comply with the applicable rules and does not sufficiently advise the court of the contentions asserted and the merit thereof, "the court is left with the dilemma of deciding that case (and possibly establishing precedent for future cases) on the basis of inadequate briefing and advocacy or undertaking additional research and briefing to supply the deficiency." *Thummel v. King*, 570 S.W.2d 679, 686 (Mo.1978). It is not the function of an appellate court to search the record to identify possible errors and research any issues so revealed. *Id.*

If we were to review Employer's third allegation, we would be acting as an advocate for Employer. *Id.* This we will not do. An appellate court will not supply the deficiencies of an inadequate brief by independent, additional research, because to do so would be inherently unfair to the opposition and parties in other cases awaiting disposition on appeal. *Id.*

Further, we decline plain error review in this case. Plain error review, which is discretionary under Rule 84.13(c), is generally not appropriate where an appellant fails to identify wherein and why there was error. *Marks v. Hopkins*, 952 S.W.2d 747, 748 (Mo.App.1997). Employer's third point is denied.

---

4. All references to Rules are to Missouri Court Rules 2005, unless otherwise specified.

### 7) *Decision*

We find that competent and substantial evidence supports the Commission's decision awarding benefits to Claimant in each appeal. The decisions of the Commission in Appeal No. 27309 and Appeal No. 27311 are affirmed.

RAHMEYER, P.J., and PARRISH, J., concur.