Marta PECK, Appellant,

v.

LA MACCHIA ENTERPRISES, Defendant,

Division of Employment Security, Respondent.

No. WD 66399.

Missouri Court of Appeals, Western District.

Oct. 3, 2006.

Marta Peck, Lee's Summit, MO, pro se.

Cynthia A. Quetsch, Jefferson City, MO, for respondent.

Before JOSEPH M. ELLIS, Presiding Judge, ROBERT G. ULRICH, Judge and RONALD R. HOLLIGER, Judge.

JOSEPH M. ELLIS, Judge.

Marta Peck appeals from a decision issued by the Labor and Industrial Relations Commission finding that she had been discharged from her employment with La Macchia Enterprises ("Employer") for misconduct connected to her work and concluding that she was, therefore, disqualified from receiving unemployment benefits.

Appellant began working for Employer on January 18, 1990, as a sales representative. In 2005, Appellant's sales territory included Western Missouri, Kansas, Nebraska, and Iowa. In the spring of 2005, Appellant was asked by her employer to assume responsibility for additional accounts and territory in Missouri. Appellant informed Employer that she would not increase her sales territory unless she received additional compensation. On June 28, 2005, Appellant was discharged by Employer for failing to perform the additional tasks assigned to her.

On July 13, 2005, Appellant filed a claim for unemployment benefits with the Division of Employment Security. After Employer filed a letter of protest challenging Appellant's claim, a deputy with the Division of Employment Security issued a determination granting Appellant's claim for benefits under § 288.050, finding that Appellant had been fired for refusing to perform additional tasks assigned to her that would have increased her sales territory by fifty percent. The deputy concluded that Appellant's refusal to perform those duties did not constitute misconduct.

Employer appealed the deputy's determination to the Appeals Tribunal. Following a hearing, on September 21, 2005, the Appeals Tribunal issued its decision reversing the deputy's determination and denying benefits to Appellant. The Appeals Tribunal determined that Employer's request that Appellant accept additional territory was not unreasonable and that Appellant's refusal to service additional accounts as requested by her employer constituted insubordination. The Appeals Tribunal concluded that Appellant's refusal to service the accounts was, therefore, misconduct connected with her work and that Appellant was disqualified from receiving benefits.

■ Appellant subsequently filed an application for review with the Labor and Industrial Relations Commission. On November 29, 2005, the Commission issued its decision affirming the decision of the Appeals Tribunal and adopting that opinion as its own. Appellant appeals from that decision.[1]

---

1. Neither Employer nor the Division of Employment Security elected to file a responsive brief in this case. "There is no penalty for a respondent failing to file a brief. That omission, however, requires this court to adjudicate the appellant's claims of error without benefit of whatever argument respondent might have made in response." *J.B. Vending Co. v. Hailey*, 77 S.W.3d 48, 50 n. 2 (Mo.App. S.D.2002) (internal citation omitted).

This Court's review of a decision entered by the Commission is governed by Section 288.210, RSMo 2000, which provides:

> The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:
>
> (1) That the commission acted without or in excess of its powers;
>
> (2) That the decision was procured by fraud;
>
> (3) That the facts found by the commission do not support the award; or
>
> (4) That there was no sufficient competent evidence in the record to warrant the making of the award.

*See also Hoover v. Community Blood Ctr.,* 153 S.W.3d 9, 12 (Mo.App. W.D.2005). " '[W]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record.' " *Dolgencorp, Inc. v. Zatorski,* 134 S.W.3d 813, 817 (Mo.App. W.D.2004) (quoting *Hampton v. Big Boy Steel Erection,* 121 S.W.3d 220, 223 (Mo. banc 2003)). " 'An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.' " *Id.* (quoting *Hampton,* 121 S.W.3d at 223).

"In considering the whole record, this court defers to the Commission's determination as to the credibility of witnesses." Id. On the other hand, "on appeal, we are 'not bound by the Commission's conclusions of law or the Commission's applica-

tion of law to the facts.' " *Hoover,* 153 S.W.3d at 12 (quoting *McClelland v. Hogan Pers., LLC,* 116 S.W.3d 660, 664 (Mo. App. W.D.2003)).

In her sole point on appeal, Appellant contends that the evidence did not support a finding that she was guilty of any misconduct related to her work that would justify her discharge from employment.

"Pursuant to § 288.050.2, if an individual is fired for misconduct connected with his or her work, that individual may be denied employment security benefits for four to sixteen weeks." *Id.* Section 288.030.1(24), RSMo Cum.Supp.2005, defines "misconduct" as

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.[2]

"In general, a claimant bears the burden of demonstrating that he or she is entitled to unemployment benefits; however, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim of misconduct connected with work." *Hoover,* 153 S.W.3d at 13 (internal quotation and citation omitted).

The Commission made the following factual findings related to Appellant's separation from work:

---

**2.** "This statutory definition, effective January 1, 2005, sets forth a nearly identical definition of 'misconduct' to that announced by the ap-

pellate courts of this State." *Dameron v. Drury Inns, Inc.,* 190 S.W.3d 508, 511 (Mo.App. E.D.2006).

The claimant's sales territory included Western Missouri, Kansas, Nebraska, and Iowa. The claimant carried 367 accounts, with larger accounts totaling 181 of that number. In Spring 2005, the claimant was directed to pick up accounts in four Missouri Cities, in addition to her territory. The claimant was assigned Columbia, Missouri; Springfield, Missouri; Jefferson City, Missouri; and Moberly, Missouri. The change would bring the claimant's total up to 454 accounts. However, of the increase, the larger accounts amounted to 38 accounts.

The claimant told her supervisor that she would visit some of the accounts on a one-time basis. The claimant, however, refused to increase her geographic sales territory unless she received a raise. The claimant, who made approximately $41,000 per year, requested a $10,000 per year raise, before she would increase her responsibilities. The claimant and the employer discussed a raise, however, the employer told the claimant that they were not going to increase her compensation. Approximately two weeks prior to the claimant's separation from work, the claimant's supervisor indicated that he was going to consult with personnel regarding the claimant's refusal to increase her territory. The

claimant still would not increase her territory without a raise. On June 28, 2005, the claimant was discharged because she refused to perform the tasks assigned to her in visiting the new accounts.

The claimant indicated at the hearing that her refusal to take the new accounts was a negotiating tool, and that she would not have left her job with the employer even if she had not received additional compensation. The claimant was never promised a certain number of accounts, and the number of accounts that the claimant has serviced had changed over the years.[3]

 Appellant does not challenge any of the facts found by the Commission, except for noting that she serviced the additional territory for five months while waiting to hear whether she would be granted a raise. Appellant's real claim is that the facts do not support a finding that her actions in refusing to service the additional accounts constituted misconduct or insubordination. "Whether the Commission's findings support the conclusion that an employee's actions rise to the level of disqualifying misconduct is a question of law."[4] *City of Branson v. Santo*, 111 S.W.3d 910, 914 (Mo.App. S.D.2003).

3. In concluding that Appellant was discharged for misconduct connected with work, the Commission stated:

The claimant was discharged because she refused to accept increased job responsibilities. Specifically, she refused a geographic territory including Columbia, Missouri; Springfield, Missouri; Jefferson City, Missouri; and Moberly, Missouri. Her refusal to service the new accounts amounts to insubordination. Her refusal shows an intentional and substantial disregard of the employer's interest. The claimant was never promised a certain number of accounts and the number of accounts she serviced

had changed over the years. The employer's request was not unreasonable given the fact that the claimant would have agreed to the servicing of the additional accounts had she known that she was not going to receive additional compensation. The claimant's refusal to accept her assigned job duties amounts to misconduct connected with work. Therefore, ... the employer discharged the claimant on June 28, 2005, for misconduct connected with work.

4. "On the other hand, the reason an employer discharged an employee is a question of fact." *City of Branson v. Santo*, 111 S.W.3d 910, 914 (Mo.App. S.D.2003) (emphasis omitted).

Appellant's supervisor testified that Appellant was terminated for failing to carry out her job responsibilities—specifically, her failure to service the new accounts after he requested that she take over that territory. Based upon the Commission's findings, Employer was asking Appellant to increase the number of accounts she serviced by 24%, and the number of large accounts she was servicing by 21%.[5] Appellant requested a 24% increase in her salary in exchange for performing those additional services.

 Appellant testified that servicing the additional territory would require an additional 15 to 20 hours per week. Employer did not present any evidence that would contradict that testimony or that would otherwise challenge its credibility, and the Commission made no finding that Appellant's testimony was not credible.[6] Appellant was a salaried employee, earning $41,000 per year, and would not be compensated for the additional hours she worked as a result of assuming additional accounts.

 "[W]hether an employer has solid grounds to terminate an employee is not the same issue as whether the former employee qualifies for compensation." *Dixon v. Division of Employment Sec.*, 106 S.W.3d 536, 540 (Mo.App. W.D.2003) (internal quotation omitted). While Appellant's refusal to take on substantial additional duties without additional compensation certainly justified Employer's decision to discharge her, her refusal was not unreasonable and did not constitute misconduct as defined in § 288.030.1(24). *See Von Hoffman Press, Inc. v. Industrial Comm'n*, 478 S.W.2d 403, 404–05 (Mo.App. E.D.1972) (holding employee was not guilty of misconduct connected with work where she refused to accede to employer's demand that she change from part-time employment to full-time employment at a lesser hourly wage and was, therefore, discharged).[7]

---

**5.** Appellant's supervisor testified that he was asking her to take on a 20 to 21% increase her accounts.

**6.** "[T]he Commission determines the weight of and credibility of the evidence, and, when that evidence conflicts, the Commission's determination of the facts is conclusive." *Scrivener Oil Co. v. Division of Employment Sec.*, 184 S.W.3d 635, 639 (Mo.App. S.D.2006) (internal quotation omitted). "However, the Commission may not 'disregard or ignore undisputed testimony of a witness not shown to have been impeached or disbelieved by the agency.'" *Id.* (quoting *Lusher v. Gerald Harris Constr., Inc.*, 993 S.W.2d 537, 545 (Mo. App. W.D.1999)). "Only when the Commission finds it to be unbelievable or not credible, is it free to ignore such evidence or testimony." *Id.*

**7.** Indeed, a "substantial change in wages or working conditions from those in force at the time the claimant's employment commenced" provides an employee with good cause for voluntarily quitting the employment. *Sokol v. Labor & Indus. Relations Comm'n*, 946

S.W.2d 20, 27 (Mo.App. W.D.1997) (internal quotation omitted); *see also Miller v. Help At Home, Inc.*, 186 S.W.3d 801, 809 (Mo.App. W.D.2006). "[I]n order to establish good cause, an employee must prove that an effort was made to resolve the matter before resorting to the drastic remedy of terminating the job." *Mitchell v. Division of Employment Sec.*, 922 S.W.2d 425, 429 (Mo.App. S.D. 1996). In this case, Appellant was making an effort to resolve the matter when Employer chose to terminate her. Had Employer not discharged Appellant, Appellant could have quit her employment and still have been eligible for unemployment benefits because she would have been quitting due to a substantial change in the conditions of her employment which resulted in a significant decrease in her hourly compensation—good cause attributable to her employment. Contrary to the conclusion reached by the Commission, the fact that Appellant testified that she would have performed the work if she had known they were going to fire her for failing to do so does not conclusively establish that Employer's demands were reasonable or that the

For the foregoing reasons, the Commission's decision is reversed, and the cause is remanded for a determination of Appellant's unemployment benefits in accordance with this opinion.

All concur.

changes to her work conditions were not sub- stantial.