Dale OTTOMEYER, Appellant,

v.

WHELAN SECURITY COMPANY
and Division of Employment
Security, Respondents.

No. ED 87504.

Missouri Court of Appeals,
Eastern District,
Division Two.

Oct. 3, 2006.

Dale Ottomeyer, House Springs, MO, pro se.

Whelan Security Company, Inc., St. Louis, Mo, pro se.

Cynthia Ann Quetsch, Attorney at Law, Jefferson City, MO, for Div. of Employment Security.

GARY M. GAERTNER, SR., Judge.

Appellant, Dale Ottomeyer ("Claimant"), appeals from the decision of the Labor and Industrial Relations Commission ("the Commission") in favor of Respondents, Whelan Security Company ("Employer") and Division of Employment Security ("the Division"). The Commission determined that Claimant is disqualified for unemployment benefits because he was discharged by Employer for misconduct connected with work. We affirm.[1]

Claimant began working for Employer on May 14, 2002 as a security guard.

1. We note that Respondents have not filed briefs in this case.

Claimant worked five days a week from 11:00 p.m. to 7:00 a.m.

Claimant was assigned to work at Lambert–St. Louis International Airport. Claimant's position involved a high level of security. Claimant was responsible for guarding a fifty-foot wide gate ("the gate") that allowed persons, airplanes, tugs, and tug operators access to the tarmac. Specifically, Claimant was required to make sure only authorized persons and tug operators entered and exited the tarmac area through the gate. Accordingly, Claimant was responsible for checking the identification of persons on foot and tug operators who would attempt to enter or exit the tarmac through the gate. On the other hand, Claimant was not responsible for checking the identification of persons who were driving or sitting in airplanes. Claimant had a guard shack near the gate in which he could station himself.

In its normal condition, the gate would be closed and Claimant had a handheld remote to open and close the gate. However, sometime prior to April of 2005, the gate broke and could not be closed. Thus, the gate remained open all the time. Claimant was aware that the gate was broken.

On April 1, 2005, at approximately 5:00 a.m., a tug towing an airplane into the tarmac area pulled up to the gate. The tug operator did not see Claimant or any other security guard, and proceeded through the gate. The tug operator radioed the control tower to inform them that a security guard was not present and that no one had checked his identification. Subsequently, the control tower notified Employer that the tug towing the airplane entered the tarmac area although the tug operator had not been checked for proper identification.

When Employer investigated the incident, Claimant indicated that he did not see the tug towing the airplane enter the tarmac area through the gate. At one point in time during Claimant's shift however, a stationary airplane was obstructing his view of the gate for about thirty minutes. During this timeframe, Claimant did not leave his guard shack to ensure that unauthorized persons or tug operators were not accessing the tarmac through the gate from the other side of the stationary airplane.

As a result of the April 1, 2005 incident, Employer discharged Claimant on April 4, 2005. Subsequently, Claimant filed a claim for unemployment benefits. On April 29, 2005, a deputy with the Division determined that Claimant is not disqualified from gaining unemployment benefits because Claimant was not discharged by Employer for misconduct connected with work. On July 11, 2005, the Appeals Tribunal issued a decision affirming the deputy's determination.

Thereafter, Employer filed a timely application for review to the Commission. On January 9, 2006, the Commission reversed the decision of the Appeals Tribunal, finding that Claimant was discharged by Employer for misconduct connected with work, and thus is disqualified from gaining unemployment benefits. This appeal by Claimant followed.

■ We will uphold the award of the Commission if there is sufficient competent and substantial evidence to support the award. *Hampton v. Big Boy Steel Erection*, 121 S.W.3d 220, 222–23 (Mo.banc 2003). An award is not supported by competent and substantial evidence if it is contrary to the overwhelming weight of the evidence. *Id.* at 223.

■ We defer to the Commission's determinations with respect to factual findings and the credibility of the witnesses. *Dixon v. Division of Employment Sec.*, 106 S.W.3d 536, 540 (Mo.App. W.D.2003).

However, no deference is given to the Commission's determinations regarding questions of law. *Id.*

In his sole point on appeal,[2] Claimant asserts the Commission erred in finding that he was discharged by Employer for misconduct connected with work.

Whether a claimant's actions constitute misconduct connected with work is a question of law. *Id.* Accordingly, we are not bound by the Commission's finding with respect to this issue. *Id.*

Generally, it is the claimant's burden to demonstrate that he is entitled to unemployment benefits. *Akers v. Barnes–Jewish Hosp.*, 164 S.W.3d 136, 138 (Mo. App. E.D.2005). However, when the employer asserts that the claimant was discharged for misconduct, the burden shifts to the employer to show the claimant was discharged for misconduct connected with his work. *Id.*

A claimant shall be disqualified for waiting week credit and benefits if he has been discharged for misconduct connected with his work. Section 288.050.2, RSMo 2005.[3] "Misconduct" is defined as:

> an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or *negligence in such degree or recurrence as to* manifest culpability, wrongful intent or evil design, or *show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer.* Section 288.030.1(24) (emphasis added).

Under this definition, there is the requirement that the employee willfully violate: (1) the employer's interest; (2) the employer's rules; (3) the employer's standards; or (4) his duties and obligations to the employer. *See id.; Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 (Mo.App. E.D.2006) (finding that section 288.030.1(24) requires that the employee willfully violate the rules or standards of the employer). Willful misconduct can be established by a claimant's action or inaction. *Dixon*, 106 S.W.3d at 542. When a claimant is engaged in an area of employment where military-like discipline is required to preserve human lives, the claimant must be held to a high degree of care in the exercise of his duties. *See generally Pemiscot Hosp. v. Missouri Labor & Ind.*, 897 S.W.2d 222, 228 (Mo.App. S.D.1995) (noting military-like discipline is required to preserve human lives in the medical field).

In this case, we initially note that we find that Claimant's position as a security guard at an international airport, which involves a high level of security, is one in which military-like discipline is required to preserve human lives. Accordingly, Claimant must be held to a high degree of care in the exercise of his duties.

Claimant was responsible for checking the identification of tug operators who would attempt to enter or exit the tarmac through the gate. Claimant was aware that the gate was broken. A witness for Employer testified that because of the gate's broken condition, it was expected that guards assigned to the gate would be more vigilant in exercising their duties.

---

2. Claimant also has a second point on appeal in his brief. But because this point on appeal does not state how the trial court erred, it does not comply with Rule 84.04(d) and preserves nothing for appellate review. *See Storey v. State*, 175 S.W.3d 116, 126 (Mo.banc 2005). Accordingly, we will not review this point on appeal.

3. All statutory references are to RSMo 2005, unless otherwise indicated.

Claimant testified that at one point in time during his shift, a stationary airplane was obstructing his view of the gate for about thirty minutes. Apparently, it was during this timeframe that a tug towing an airplane went through the gate unbeknownst to Claimant. Claimant did not check the tug operator's identification.

A witness for Employer testified that if something was blocking Claimant's view of the gate, it was within the scope of Claimant's duties to leave the guard shack to ensure that no unauthorized persons and tug operators were accessing the tarmac. Claimant stated that nothing prevented him from leaving the guard shack while the stationary airplane was blocking his view.

Claimant was aware that the gate was broken and that his view of the gate was obstructed. In addition, Claimant had the ability and duty to leave the guard shack to ensure that no unauthorized persons and tug operators accessed the tarmac. Nevertheless, Claimant failed to leave his guard shack to command a better view of the gate. Because Claimant must be held to a high degree of care in the exercise of his duties, we find that this inaction by Claimant constitutes negligence in such degree as to show an intentional and substantial disregard of Claimant's duties to Employer. Thus, we hold that Claimant's inaction amounts to willful misconduct.

Therefore, the Commission did not err in finding that Claimant was discharged by Employer for misconduct connected with work. Point denied.

Based on the foregoing, we affirm the decision of the Commission.

GEORGE W. DRAPER III, P.J., ROBERT G. DOWD, JR., J., concur.