**Kimberly WHITE, Appellant,**

v.

**ST. LOUIS TEACHERS UNION; Defendant,**

**DIVISION OF EMPLOYMENT SECURITY, Respondent.**

No. WD 67177.

Missouri Court of Appeals, Western District.

March 27, 2007.

Kimberly White, E. St. Louis, IL, pro se.

Larry R. Ruhmann, Jefferson City, for respondent.

Before LISA WHITE HARDWICK, P.J., ROBERT G. ULRICH and THOMAS H. NEWTON, JJ.

ROBERT G. ULRICH, Judge.

Kimberly White appeals the order of the Labor and Industrial Relations Commission (the Commission) affirming Ms. White's disqualification from receiving certain unemployment benefits. On appeal, Ms. White complains the order was not supported by the evidence because her employer failed to demonstrate her discharge was due to misconduct connected to work. The order is affirmed.

## Facts

Ms. White worked full time as a secretary for the St. Louis Teachers and School Related Personnel Union Local 420 (the Union) for approximately ten years. In February 2005, Ms. White was due a paycheck in the amount of $957 for the pay period February 1 through February 15. While she had made arrangements to have her paycheck directly deposited into her bank account, Ms. White believed the due paycheck would not be deposited because her bank account was too new. She received a paper check for $957 on February 11, 2005. The $957 for the direct deposit paycheck was deposited into her account on March 16, 2005. Thus, Ms. White was paid twice for the February 1 through February 15 pay period.

In August 2005, the Union informed Ms. White that an audit of its records revealed the double payment. In September 2005, Ms. White confirmed through her bank records that a double payment had been made and agreed to repay the extra money. Ms. White also owed the Union monies from a paycheck advance made in 2003.

The Union informed Ms. White in a letter dated December 15, 2005, that she

would be required to make biweekly payments of $100 to indemnify the Union for the extra paycheck and the money still owed from the 2003 advance. Ms. White did not make her first payment until January 19, 2006.

Ms. White was informed in a February 1, 2006, letter that her employment with the Union would terminate two weeks from the date of the letter. Ms. White was notified in a second letter, also dated February 1, 2006, that her final two paychecks from the Union would include severance pay, sick days, and vacation and displayed each of these sums. The second letter also informed Ms. White that the outstanding balance still owed to the Union would be deducted from the amount she was otherwise entitled to receive, and she would receive the remaining balance.

Ms. White filed an initial claim for unemployment benefits with the Missouri Division of Employment Security (the Division)[1] on February 2, 2006. On February 24, 2006, the Division determined Ms. White was disqualified from benefits because she was discharged for misconduct associated with work.

Ms. White appealed this determination to the Appeals Tribunal. A hearing was had via telephone conference on March 20, 2006. The Union did not participate in the hearing. The Appeals Tribunal affirmed the Division's determination.

Ms. White appealed the decision of the Appeals Tribunal to the Commission. The Commission affirmed the decision of the Appeals Tribunal, stating "it is fully supported by the competent and substantial evidence on the whole record and it is in accordance with the relevant provisions of the Missouri Employment Security Law."

The Commission adopted the decision of the Appeals Tribunal as its decision.

Ms. White's timely appeal to the Missouri Court of Appeals, Eastern District followed. Ms. White is a resident of Illinois. This court has jurisdiction pursuant to section 288.210,[2] which states, in relevant part: "In such cases involving a claimant who is not a resident of this state, and in all cases not involving a claimant, the Missouri court of appeals for the western district shall have jurisdiction of the appeal." *See also* § 477.070. Accordingly, Ms. White's appeal was transferred to this court. This court has jurisdiction, and no party challenges this court's jurisdiction.

Additional facts will be set forth in the opinion as needed.

### Statutory Framework and Standard of Review

Chapter 288 is the Missouri Employment Security Law. § 288.010. "The rationale of the Missouri Employment Security Law is to provide benefits to persons 'unemployed through no fault of their own.'" *RPCS, Inc. v. Waters,* 190 S.W.3d 580, 585 (Mo.App. S.D.2006)(*quoting* § 288.020.1). For this reason, the provisions "require liberal construction and disqualifying provisions of the law are to be strictly construed against the disallowance of benefits to unemployed but available workers." *Croy v. Div. of Employment Sec.,* 187 S.W.3d 888, 892 (Mo.App. S.D. 2006). " 'In short, judicial interpretations of the unemployment statutes have required that an employee not have *caused* his dismissal by his wrongful action or inaction or his choosing not to be employed.' " *Id.* (citation omitted).

---

1. The Division of Employment Security is a subpart of the Missouri Department of Labor and Industrial Relations.

2. All statutory citations are to RSMo 2000 unless otherwise stated.

██ Section 288.210 governs appellate review of the Commission's decision and provides, in relevant part:

Upon appeal no additional evidence shall be heard. The findings of the commission as to the facts, if supported by competent and substantial evidence and in the absence of fraud, shall be conclusive, and the jurisdiction of the appellate court shall be confined to questions of law. The court, on appeal, may modify, reverse, remand for rehearing, or set aside the decision of the commission on the following grounds and no other:

(1) That the commission acted without or in excess of its powers;

(2) That the decision was procured by fraud;

(3) That the facts found by the commission do not support the award; or

(4) That there was no sufficient competent evidence in the record to warrant the making of the award.

Section 288.050 governs the eligibility of unemployment benefits. Section 288.050.2 provides:

If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state or any other state as prescribed in this section. In addition to the disqualification for benefits pursuant to this provision the division may in the more aggravated cases of misconduct, cancel all or any part of the individual's wage credits, which were established through the individual's employment by the employer who discharged such individual, according to the seriousness of the misconduct. A disqualification provided for pursuant to this subsection shall not apply to any week which occurs after the claimant has earned wages for work insured pursuant to the unemployment compensation laws of any state in an amount equal to six times the claimant's weekly benefit amount.

Section 288.030(24) [3] defines "misconduct" [4] as:

"**Misconduct**", an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer;

"Under this definition, there is the requirement that the employee willfully violate: (1) the employer's interest; (2) the employer's rules; (3) the employer's standards; or (4) his duties and obligations to the employer." *Ottomeyer v. Whelan Sec. Co.*, 202 S.W.3d 88, 91 (Mo.App. E.D.2006). "In each of the alternative ways in which

---

**3.** Section 288.030 was revised in 2006, and the definition of "misconduct" was renumbered as subsection (23). That was the only change made to the definition of "misconduct."

**4.** "This statutory definition, effective January 1, 2005, sets forth a nearly identical definition of 'misconduct' to that announced by the appellate courts of this State." *Peck v. La Macchia Enterprises*, 202 S.W.3d 77, 80 n. 2 (Mo. App. W.D.2006)(*quoting Dameron v. Drury Inns, Inc.*, 190 S.W.3d 508, 511 (Mo.App. E.D.2006)).

an employee can engage in misconduct disqualifying the employee from receiving unemployment compensation, there is the requirement that the employee willfully violate the rules or standards of the employer." *White v. Wackenhut Corp.*, 208 S.W.3d 916, 918 (Mo.App. E.D.2006). "Willful misconduct can be established when the claimant consciously disregards the interest of the employer by action or inaction." *RPCS, Inc.*, 190 S.W.3d at 586. "The context of the term 'disregard' in the definition of misconduct indicates . . . that disregard of the standards of behavior means 'an intentional slight.'" *Dixon v. Div. of Employment Sec.*, 106 S.W.3d 536, 541 (Mo.App. W.D.2003). Each definition set out above also requires a showing of culpability on the part of the employee. § 288.030(24).

■ "There is a vast distinction between the violation of an employer's work rule, which would justify the discharge of the employee, and a willful, wanton, or deliberate violation of such rule, which would warrant a determination of misconduct disqualifying the claimant for unemployment-compensation benefits." *White*, 208 S.W.3d at 918–19. "Poor workmanship, lack of judgment, or inability to do the job do not disqualify a claimant from receiving benefits on the basis of misconduct." *Berwin v. Lindenwood Female College*, 205 S.W.3d 291, 295 (Mo.App. E.D.2006).

■ The Commission's award will be upheld if there is sufficient competent and substantial evidence to support it. *Id.* at 294. "Substantial evidence is evidence which has probative force on the issues, and from which the trier of facts can reasonably decide the case." *Brown v. Div. of Employment Sec.*, 947 S.W.2d 448, 452 (Mo.App. W.D.1997). " '[W]hether the award is supported by competent and substantial evidence is judged by examining the evidence in the context of the whole record.'" *Peck v. La Macchia Enters.*, 202 S.W.3d 77, 80 (Mo.App. W.D.2006) (citation omitted). " 'An award that is contrary to the overwhelming weight of the evidence is, in context, not supported by competent and substantial evidence.'" *Id.* (citation omitted).

■ Deference is given to the Commission's determinations regarding weight of the evidence and the credibility of witnesses. *Berwin,* 205 S.W.3d at 294. When the Commission has reached one of two possible conclusions from the evidence, reviewing authority will not reach a contrary conclusion even if it could reasonably do so. *RPCS,* 190 S.W.3d at 583. If the evidence before the Commission would warrant either of two opposed findings, reviewing authority is bound by the administrative determination. *Id.* at 583–84.

■ Although deference is given to the factual findings of the Commission if supported by competent and substantial evidence, the issue of whether an employee's actions constitute misconduct associated with the employee's work is a question of law. *Berwin,* 205 S.W.3d at 294. "To the extent an appeal involves questions of law, no deference is given to the Commission." *Id.* "As such, whether the Commission's findings support the conclusion that Claimant. was guilty of misconduct is a question of law, by which [reviewing authority is] not bound." *Id.*

■ "Generally, a claimant has the burden of showing that he or she is entitled to unemployment benefits." *Id.* at 294–95. "However, when the employer claims that the applicant was discharged for misconduct, the burden shifts to the employer to prove the claim or misconduct connected with work." *Id.* at 295. The employer must show this by a preponderance of the evidence. *Id.*

## Analysis

As noted, *supra*, section 288.210 governs appellate review of the Commission's decision and provides an exclusive list of four grounds upon which reviewing authority may rely to find error in the Commission's decision. These grounds are: (1) the commission acted without or in excess of its powers; (2) the decision was procured by fraud; (3) the facts found by the commission do not support the award; or (4) there was no sufficient competent evidence in the record to warrant the making of the award. § 288.210. In her sole point relied upon, Ms. White asserts this court should find error in the Commission's decision based on the fourth ground, the decision was not supported by the evidence.[5]

 The Commission adopted the decision of Appeals Tribunal and, therefore, that decision is utilized in reviewing the order of the Commission. *See Scrivener Oil Co. v. Div. of Employment Sec.*, 184 S.W.3d 635, 638 (Mo.App. S.D.2006). As an initial matter, Ms. White notes that the Union did not participate in the hearing before the Appeals Tribunal. Accordingly, it did not submit evidence or call witnesses. She also correctly notes that the Union had the burden to prove she was discharged for misconduct associated with work. *Berwin*, 205 S.W.3d at 295. Ms. White suggests that she should have been awarded benefits by default because her employer failed to participate in the hearing before the Appeals Tribunal.

 This contention fails because "in all cases where the burden of proof is on one party the evidence produced by the other party may lift or lighten the load." *Malone v. St. Louis–San Francisco Ry.*

*Co.*, 202 Mo.App. 489, 213 S.W. 864, 864 (1919). The Commission's order was based upon the evidence presented at the hearing before the Appeals Tribunal. Pursuant to section 288.210, this court determines whether the order is supported by sufficient competent evidence. There is no requirement that the evidence presented and considered by the decision-maker must have been offered by the party bearing the burden of proof.

In its decision, the Appeals Tribunal determined Ms. White was "discharged for dishonesty and deceitfulness." It further found that she was inadvertently paid twice for the February 1 through February 15, 2005, pay period. The Union notified Ms. White of the error in late August 2005. A repayment plan was established, but Ms. White failed to make a timely payment pursuant to the plan.

Ms. White makes several challenges to the findings of fact. First, she claims she was not notified two times of the discrepancy, as found by the Appeals Tribunal. She is referring to the following finding:

> In late August and again in September of 2005, the claimant was notified that the employer's auditors discovered that the claimant was paid twice for the same pay period.

Instead, she asserts she was notified one time on August 30, 2005. Both Ms. White's testimony and the documentary evidence produced by Ms. White indicate she was informed of the double payment in August 2005, and she verified the double payment in September 2005. Correspondence regarding the double payment was exchanged between Ms. White and the Union throughout August and September 2005. This finding is supported by suffi-

---

5. Ms. White further states in her point relied on that the Division failed to meet its burden of producing evidence that her discharge was due to misconduct connected to work. The Division does not have a burden of proof. The Union, the employer, has the burden of proof with respect to misconduct. *Berwin*, 205 S.W.3d at 294–95.

cient competent evidence. Moreover, whether she was notified a second time in September is irrelevant to the disposition of this appeal, as will be apparent, *infra.*

Ms. White further claims that she was not terminated for failing to reimburse the Union immediately upon discovery of the overpayment. She asserts that if the Union believed she were being dishonest, it would not have entered into a payment plan. This argument is misplaced. The Appeals Tribunal did not find that Ms. White was terminated for failure to repay the Union immediately upon discovery of the overpayment. Instead, it found Ms. White was terminated for failure to begin to reimburse the Union until January 2006, months after the overpayment was discovered and brought to her attention and weeks after the repayment plan was established.

Ms. White states that the Appeals Tribunal's findings suggest a substantial period of time passed between the establishment of the repayment plan and her first payment. She is referring to the following finding:

> Prior to September 15, 2005, the claimant had not reimbursed the employer for the total sum of $957 for the first payroll period of February 2005. She was then informed that she would be required to make monthly payments of no less than $100 to indemnify the employer for the total sum.

This finding does contain an error. The letter establishing the repayment plan was dated December 15, 2005. As this fact was uncontradicted and all the evidence clearly demonstrated the plan was established in December, the Appeals Tribunal presumably made a typographical error. Ms. White claims this error is noteworthy because she promptly complied with the repayment plan. Her own testimony contradicts this assertion, however. When

asked why she delayed making payments under the repayment plan, Ms. White testified she waited to begin the repayment plan until after Christmas, and she began repayment on January 19, 2006. While she delayed only a few weeks at most, Ms. White did not immediately comply with the repayment plan. She failed to make payments the first and second payment dates.

Ms. White further states that the finding that she had not made full reimbursement as of February 1, 2006, fails to take into consideration that the Union's repayment plan did not contemplate full reimbursement by that date. She is referring to the following finding:

> As of February 1, 2006, the claimant had not paid total restitution for the sum advanced one year prior.

This argument is also misplaced. The Appeals Tribunal did not find that full reimbursement was expected by February 1, 2006. It merely found that full reimbursement had not been tendered as of the day she was terminated. None of the evidence presented suggests otherwise.

■ Ms. White only challenges the above identified four findings of fact. The major thrust of her complaint is that her actions constituted mistake and negligence and not misconduct. This is a challenge to the Appeals Tribunal's conclusion of law. As noted, *supra,* the issue of whether the Commission's findings support the conclusion that she was guilty of misconduct is reviewed de novo. *Berwin,* 205 S.W.3d at 294.

Ms. White claims she mistakenly received an extra paycheck and was unaware of the mistake until the Union brought it to her attention. She further claims the Union did not think she was stealing, as evinced by the facts that she was not immediately terminated and was given two weeks severance pay when she was dis-

charged. She asserts that the Union's absence from the hearing indicates it did not strongly protest her claim for benefits. In addition, she states willful and wanton misconduct requires something other than being a bad bookkeeper with one's checkbook. Ms. White states in her brief that "[t]he misconduct found by the hearing officer stems from the timing of the reimbursement of my employer." Thus, Ms. White's assertions that she did not intend to receive double payment and was unaware of the double payment until August 2005 do not impact the legal analysis. Ms. White's purported misconduct was not being a poor bookkeeper; instead, it was her failure to repay her employer in a timely manner after discovering she had been paid twice for a single pay period.

■ The facts, as presented by Ms. White, found by the Appeals Tribunal, and adopted by the Commission are: (1) Ms. White was notified of the overpayment in August 2005; (2) she verified the overpayment in September 2005; (3) she had an obligation to repay the money to the Union; (4) she had not repaid any of the money as of December 15, 2005, when the Union set up a repayment plan; (5) she delayed making payments under the repayment plan until January 19, 2006, missing two payments pursuant to the repayment plan; (6) she was terminated on February 1, 2006, because she failed to repay the Union in a timely manner; and (7) at the time she was terminated, Ms. White still owed the Union for monies advanced to her in 2003. Despite knowing she was obligated to repay the Union and despite her testimony that she was eager to repay the Union as soon a possible, Ms. White made no effort to repay the Union in September, October, November, or December 2005. In an effort to secure repayment, the Union set forth a repayment plan on December 15, 2005. Yet, Ms.

White delayed repayment until after Christmas, missed the first two payments according to the repayment plan, and made her first payment on January 19, 2006, more than a month after the repayment plan was established. Ms. White violated her responsibility to the Union and her action of not repaying the Union in a timely manner was intentional behavior that showed a wanton or willful disregard of the Union's interest and a disregard of the standards of behavior, which the employer has the right to expect of its employee. Her failure to repay the Union in a timely manner constituted misconduct as set forth in section 288.030(24).

■ Ms. White relies upon the statement in *Yellow Freight System v. Thomas*, 987 S.W.2d 1, 4 (Mo.App. W.D.1998), that: "An isolated act of simple negligence is not, as a matter of law, misconduct connected with work." She does not indicate the negligent act to which she is referring. If the identified negligence is her failure to reconcile her bank account and realize she had been paid twice, this argument is irrelevant as the failure to recognize the overpayment was not the misconduct for which she was terminated. The negligent act to which Ms. White refers may be her failure to repay the Union in a timely manner, the identified misconduct in this case. Ms. White testified she did not immediately repay the money owed the Union in September 2005, when she confirmed the overpayment, because she lacked sufficient funds. She testified she did not immediately begin payment under the repayment plan because she "did Christmas" and then began repayment. "Willful misconduct can be established when the claimant consciously disregards the interest of the employer by action or *inaction*." *RPCS, Inc.*, 190 S.W.3d at 586 (emphasis added). The Union stated in its August 30, 2005, letter that it expected repayment "immediately."

Moreover, Ms. White testified she was eager to resolve the matter "as soon as possible." Yet, she did not comply with the reasonable repayment plan schedule, and she delayed for months claiming that she lacked the funds. She does not claim and the record is devoid of evidence that she communicated with her employer that she was unable to comply with the repayment schedule. She intentionally did not repay the Union. That her decision to not repay was based on her personal financial situation does not make her action of failing to repay negligence.

The court in *Yellow Freight System* stated that negligence can be misconduct of it is "in such degree or recurrence as to manifest culpability, wrongful intent or evil design." 987 S.W.2d at 4 (citation omitted). Ms. White failed to repay the Union for a period of months, and she then failed to comply with the repayment schedule. Thus, if it was negligence, it was of degree or recurrence as to manifest culpability, wrongful intent, or evil design. This conclusion is buttressed by the fact that, at the time of her termination, Ms. White still owed the Union monies advanced to her in 2003.

In the argument portion of her brief, Ms. White urges this court to find error based on reasons not identified in section 288.210. These include her claims that: (1) the Division's initial determination that she was disqualified from receiving benefits due to misconduct was based upon a statement given over the telephone, which the Division failed to prove came from the Union; (2) the Division did not follow the proper channels of investigating unemployment claims; (3) the Division must have created the "Employer's Statement" because it did not come from the Union; (4) the Division failed to prove that the "Employer's Statement" came from the Union; (5) the Union improperly protested her severance pay; (6) the alleged misconduct found by the Commission was not the same misconduct initially identified by the Division as the basis for disqualification from benefits. This court is constrained by the standard of review set forth in section 288.210. Moreover, Ms. White makes most of these contentions without explaining them or citing legal authority. In addition, many are arguments she failed to make to either the Appeals Tribunal or the Commission. Accordingly, these contentions are not addressed.

■ Ms. White also asserts that the transcript of the hearing before the Appeals Tribunal has been altered. She claims it is "obvious" that portions of the transcript have been altered. She identifies portions she states do not make sense. This court has reviewed the identified portions and believes they do make sense. Ms. White identifies other portions and states the Division "manipulated" them to support its position in denying her claim. The transcript reveals no manipulation or alteration. The transcript is certified to be an accurate transcript of the proceedings had before the Appeals Tribunal. "A transcript, duly approved, as here, is presumed to be correct." *Kummer v. Cruz*, 752 S.W.2d 801, 809 (Mo.App. E.D.1988). Ms. White should have objected to the certification of the transcript if she felt it was incorrect. *Id.* Ms. White urges this court to listen to the recording of the hearing, but she has failed to provide the recording as a part of the record on appeal. As the appellant, it is her burden under Rule 81.12(a) to provide "all of the record, proceedings and evidence necessary to the determination of all questions presented." Her arguments as to the validity of the transcript must fail.

■ Finally, Ms. White states that the presiding Appeals Tribunal referee became biased and asked questions that insulted

her intelligence. She claims she was "totally appalled" by these questions and that the officer "expressed prejudice." The interaction about which she complains is the following:

Q. Uh-huh. And do you periodically reconcile your checking account?

A. Well, that's something I have to learn to do; no, sir.

Q. You have to learn to do it?

A. Yeah. I—I—I do have poor money-management skills.

Q. Uh-huh. All right. What is the highest grade of education that you've completed, Ms. White?

A. Twelfth grade.

Q. You're a high-school graduate?

A. Yes.

Q. Uh-huh. All right. Did you—do you—you recall at high school, did you ever have a class where they—they taught how to reconcile bank accounts?

A. Probably in junior high, I believe.

Q. Junior high?

A. Uh-huh.

Ms. White's assertions do not fall within one of the four reasons this court may reverse the Commission's order as set forth in section 288.210. Thus, her assertions are outside the standard of review. Moreover, this line of questioning was not intended to be insulting and did not demonstrate bias or prejudice. The question may be classified as routine for the issue presented. The referee was attempting to determine whether Ms. White had the skills and knowledge necessary to reconcile her bank account and identify that she was erroneously paid twice. Her assertions as to this exchange must fail.

Point denied.

## Conclusion

The order of the Commission is supported by sufficient competent evidence in the record. Ms. White has failed to demonstrate one of the four grounds identified in section 288.210 have been met so as to warrant reversal of the Commission's order. Accordingly, it is affirmed.

All concur.