Miguel JENKINS, Appellant,

v.

MUSICIAN'S FRIEND,
INC.; Respondent,

and

Division of Employment Security,
Respondent.

No. WD 72204.

Missouri Court of Appeals,
Western District.

Dec. 21, 2010.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Feb. 1, 2011.

Charles B. Jellinek, Counsel, St. Louis, MO, Karen K. Cain, Co–Counsel, Kansas City, MO, for Respondent, Musician's Friend.

Ninion S. Riley, Jefferson City, MO, for Respondent, Div. of Employment Security.

Before: THOMAS H. NEWTON, P.J., JAMES M. SMART, JR., and JOSEPH M. ELLIS, JJ.

THOMAS H. NEWTON, Judge.

Mr. Miguel A. Jenkins appeals the decision of the Labor and Industrial Relations Commission (Commission) denying Mr. Jenkins unemployment benefits because he was discharged for misconduct connected with work. We affirm.

## Factual and Procedural Background

Mr. Jenkins began working for Musician's Friend, Inc. (Employer) in October of 2007. In June of 2008, he was promoted to a "Team Lead" supervisory position in Employer's call center. He was discharged on July 16, 2009. Mr. Jenkins filed a claim for unemployment compensation benefits, which Employer protested. Employer submitted Mr. Jenkins's separation report, which stated that Employer terminated Mr. Jenkins because he "violat-ed anti-harassment policy and company policy by having a relationship with one of his team members." A deputy determined that Mr. Jenkins was not disqualified from receiving benefits for misconduct connected with work because Employer did not have a policy against being in a relationship with a subordinate.

Employer appealed, and the Appeals Tribunal held a telephone hearing. Employer testified that it discharged Mr. Jenkins for "not following company policy" and for violating Employer's "anti-harassment policy." It was reported to Employer in May 2009 that Mr. Jenkins had been having a romantic relationship with a subordinate employee. At that time, Mr. Chris Purkey, a supervisor of Mr. Jenkins's, spoke with Mr. Jenkins. Mr. Jenkins denied having a relationship with a subordinate. He was told that if he did have a relationship, it needed to be reported so Employer could remove the employee from his supervision and ensure its anti-harassment policies were not being violated. Employer testified that it did not have a policy that employees could not date; rather, supervisors were required to report relationships so that accommodations could be made.

Subsequently, in July 2009, Employer learned that Mr. Jenkins might be having relationships with more than one subordinate employee. Mr. Purkey spoke with the employees, who confirmed they "had had relations" with Mr. Jenkins. Mr. Purkey then spoke with Mr. Jenkins, who acknowledged a romantic relationship with one of the employees but said they were not currently involved. Mr. Jenkins also acknowledged that he had been involved with an employee prior to their May conversation. Mr. Jenkins was placed on suspension and subsequently terminated.

Mr. Jenkins denied meeting with Mr. Purkey in May 2009. He testified that in

February, Mr. Purkey had asked him about a Post–It note on his computer with an endearment; he told Mr. Purkey the employee who wrote it was just a friend. He agreed he had met with Mr. Purkey in July. At that meeting, Mr. Jenkins said, Mr. Purkey asked him about his prior relationships with two employees. Mr. Jenkins acknowledged the past relationships and that they had occurred while he was a supervisor; he said that Mr. Purkey accepted those facts, telling him there was no policy against it. He said Mr. Purkey told him he was being suspended so that they could "have some further discussion" and arrange for Mr. Jenkins to not be close to the employees. He testified Employer later called him and told him he was being terminated for sexual harassment.

Mr. Jenkins further claimed that he had never been told Employer had a policy requiring supervisors to disclose if they dated subordinates. It was not disputed that Mr. Jenkins had been given Employer's anti-harassment training in November of 2008. In that general training, supervisors were advised, *inter alia*, that: "You should never date employees under your supervision"; and "You should avoid any sort of involvement with employees that might be interpreted as improper." Mr. Jenkins testified that after the training, he asked the Human Resources coordinator if there was a problem with dating subordinate employees. He testified she said she was not sure and that she would get back to him, but she never did. The Human Resources coordinator, however, stated that she did respond to Mr. Jenkins, telling him that dating subordinates was highly discouraged and that if it occurred, it needed to be reported so Employer could make other working arrangements. She also testified that Mr. Jenkins's involvement with the subordinate employees had caused problems for the company on two different occasions.

The Appeals Tribunal reversed the deputy's determination. It determined that Mr. Jenkins had been notified that he must report any romantic relationship with a subordinate, that he was terminated because he failed to report a romantic relationship with a subordinate, and that Mr. Jenkins's omission was an act in disregard of the standards of behavior Employer had a right to expect. It concluded this was "misconduct," and Mr. Jenkins was consequently disqualified from receiving unemployment benefits. The Commission adopted the decision of the Appeals Tribunal after affirming it as supported by "competent and substantial evidence on the whole record" and made in accord with Missouri Employment Security Law. Mr. Jenkins appeals.

### Standard of Review

 We review the Commission's decision to determine if, based upon the whole record, the Commission could reasonably have made its findings and reached its result. *Mena v. Cosentino Group, Inc.*, 233 S.W.3d 800, 803 (Mo.App. W.D.2007). We do not change its decision unless we determine that (1) the Commission "acted without or in excess of its powers"; (2) "the decision was procured by fraud"; (3) "the facts found by the commission do not support the award; or" (4) "there was no sufficient competent evidence in the record to warrant the making of the award." § 288.210;[1] *White v. St. Louis Teachers Union*, 217 S.W.3d 382, 387 (Mo.App. W.D.2007). Absent fraud, the Commission's factual findings are conclusive and binding if they are supported by competent and substantial evidence. *Mena*, 233 S.W.3d at 803. We defer to the

---

1. Statutory references are to RSMo 2000 and the Cumulative Supplement 2009.

Commission's resolution of conflicting evidence and determination of witness's credibility. *White,* 217 S.W.3d at 388. On issues of law, however, we do not defer. *Id.* Whether an employee's actions constitute misconduct connected with work is a question of law. *Id.*

## Legal Analysis

■ A claimant may be disqualified from receiving benefits if discharged for misconduct connected with work. *Id.* at 387; § 288.050.[2] Section 288.030.1(23) defines misconduct as:

an act of wanton or willful disregard of the employer's interest, a deliberate violation of the employer's rules, a disregard of standards of behavior which the employer has the right to expect of his or her employee, or negligence in such degree or recurrence as to manifest culpability, wrongful intent or evil design, or show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer[.]

The employer bears the burden of proving by substantial and competent evidence that the claimant willfully violated the employer's rules or standards. *White,* 217 S.W.3d at 388.

■ In his sole point, Mr. Jenkins argues that the Commission's finding that he was discharged for misconduct connected with work was not supported by sufficient evidence. He does not dispute that a knowing, deliberate, and willful violation of a reasonable work rule may be grounds for a finding of misconduct connected with work. *See McClelland v. Hogan Personnel, LLC,* 116 S.W.3d 660, 666 (Mo.App. W.D.2003). Rather, Mr. Jenkins contends that he did not knowingly, deliberately, or willfully violate a reasonable work rule because he was not aware of Employer's reporting requirement and thus did not "knowingly or consciously violate it." He contends that the evidence did not show that Employer had a policy requiring supervisors to report romantic relationships with subordinates; "that such a policy was consistently and unequivocally known and understood by employer enabling employer to clearly disseminate" the policy; or that Mr. Jenkins was "clearly and unequivocally" notified of such a policy.

■ In order to be considered misconduct, the employee's actions must have some element of "willfulness." *Scrivener Oil Co., Inc. v. Crider,* 304 S.W.3d 261, 268 (Mo.App. S.D.2010). Mr. Jenkins relies on *McClelland,* in which we reversed the Commission's denial of benefits based on misconduct where there was insufficient evidence establishing that the employee intentionally disregarded an employer's rule. 116 S.W.3d at 666. In *McClelland,* we distinguished between a rule violation that would justify an employee's discharge and a rule violation that "would warrant a determination of misconduct connected with the employee's employment so as to disqualify him for unemployment compensation benefits." *Id.* at 665 (internal quotation marks and citation omitted). Although the employee had signed a form stating he had received the relevant safety manual, he testified that he did not remember receiving it, that he was unaware

2. Section 288.050.2 provides that:
 If a deputy finds that a claimant has been discharged for misconduct connected with the claimant's work, such claimant shall be disqualified for waiting week credit and benefits, and no benefits shall be paid nor shall the cost of any benefits be charged against any employer for any period of employment within the base period until the claimant has earned wages for work insured under the unemployment laws of this state or any other state as prescribed in this section.

of the procedure at issue, and that other drivers did not employ it. *Id.* at 663. We found that although the employee's "lack of awareness may have been sufficient to discharge him from employment," it did not "rise to the level of willful or deliberate conduct sufficient to deny him unemployment compensation absent additional evidence." *Id.* at 666.

■ Here, however, additional evidence was presented. Both Employer's Human Resources coordinator and Mr. Purkey testified before the Appeals Tribunal that Mr. Jenkins had been informed that he was required to report any romantic relationship with a subordinate employee. Although Mr. Jenkins testified that these conversations did not occur, the Commission's finding rested on a credibility determination. When the evidence is conflicting, "the Commission's determination of the facts is conclusive." *Peck v. La Macchia Enters.*, 202 S.W.3d 77, 82, n. 6 (Mo. App. W.D.2006) (internal quotation marks and citation omitted). Consequently, we find that Mr. Jenkins was notified that he was required to report relationships with his subordinates. Mr. Jenkins does not dispute that he was in a relationship with a subordinate employee, nor does he dispute that he did not report this to Employer. Because Mr. Jenkins knew he was required to report a romantic relationship and did not do so, thus violating a reasonable work rule in disregard of the Employer's interests, the Commission properly found he engaged in misconduct.

Mr. Jenkins also relies on *Dolgencorp, Inc. v. Zatorski,* to argue that the Commission's findings on Employer's disclosure requirement were insufficient. 134 S.W.3d 813, 819 (Mo.App. W.D.2004). In *Dolgencorp,* we remanded the Commission's determination because the Commission made no findings on the policy of the employer at issue, nor did it apply the

facts at issue to show that the employee had violated the policy. *Id.* Here, however, the Commission found that Mr. Jenkins "acted in disregard of standards of behavior the employer had a right to expect" by failing to disclose a relationship with a subordinate after he had been notified of such a reporting duty. It further found that this expectation was reasonable in allowing Employer to reassign employees to mitigate negative consequences. Because the Commission made specific findings (1) that Mr. Jenkins was notified "he must report any romantic relationship with a subordinate"; (2) he "failed to disclose a romantic relationship with a subordinate"; and (3) "[b]y failing to report the relationship, the claimant acted in disregard of [Employer's] standards of behavior," we do not find *Dolgencorp* applicable. Mr. Jenkins's point is denied.

### Conclusion

For the foregoing reasons, we affirm the Commission's decision.

SMART, JR., and ELLIS, JJ., concur.